UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY FUJISHIGE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>AMAZON.COM SERVICES LLC,<br><br>　　　　Defendant. | Case No.  22-cv-06397-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 19 |

Plaintiff Amy Fujishige brings this putative sex-discrimination class action against Amazon.com Services LLC alleging that Amazon's various productivity policies violate California's Fair Employment and Housing Act ("FEHA") because the policies have a disparate impact on female employees.  First Amended Complaint ("FAC"), ECF No. 15.  Plaintiff also brings claims against Amazon for failure to prevent sex discrimination in violation of FEHA, unfair competition, and sex discrimination in violation of Title VII.  *Id.*  Pending before the Court is Amazon's motion to dismiss or strike the FAC ("Mot.").  ECF No. 19.  The Court took Amazon's motion under submission without oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons discussed below, the Court GRANTS the motion with leave to amend.

**I.	BACKGROUND**

**A.	Amazon's Fulfillment Centers**

Amazon operates large warehouses, or "fulfillment centers" where employees receive, stow, count, pick, pack, and load onto trucks consumer products.  FAC ¶ 2.  Plaintiff's claims center around Amazon's use of eight-feet tall movable storage shelves called "pods."  *Id.* ¶ 5.  Amazon uses these pods in fulfillment centers to store inventory, and employees working at the fulfillment centers interact with the pods in various capacities.  *Id.* ¶ 50.  For example, Amazon employees can be tasked with putting new inventory that has arrived at the fulfillment center onto

1  the pods ("stower"), scanning items on the pods for inventory purposes ("counter"), and taking
2  items off the pods when orders come in ("picker"). *Id.*

### B. Amazon's Productivity and Safety Policies

Productivity Policy. Plaintiff alleges that Amazon requires employees in its fulfillment centers to meet a quota of items processed hourly. FAC ¶ 63. To maintain these quotas, Amazon "uses a suite of productivity metrics and disciplinary policies and practices, and incentives" which come under an omnibus "Quality and Productivity Performance Policy" that Plaintiff refers to as the "Productivity Policy." *Id.* ¶ 64. Plaintiff believes that Amazon's Productivity Policy entails tracking employees "based on several variables," and ranks warehouse employees by their "Productivity Score" on a weekly basis. *Id.* This "Productivity Score" considers the number of units (*i.e.*, warehoused items to be stowed away in pods, counted for inventory, or picked for shipping to customers) scanned per hour ("Units Per Hour" or "UPH") and the amount of time employees spend "off task" (*i.e.*, not scanning units) ("Time Off Task" or "TOT"). *Id.* ¶¶ 7, 64. The Units Per Hour requirement can vary depending on the day or type of item being processed. *Id.* ¶¶ 65–66 (explaining the UPH may be 306 if picking mostly smaller items or 297 if picking mostly medium-sized items). Regarding the Time Off Task metric, Plaintiff alleges that after accumulating a "certain amount of TOT," employees receive notifications indicating they have spent too much TOT. *Id.* ¶ 67. Plaintiff alleges that prior to June 2021, Amazon enforced a 30-minute TOT limit per day, but Amazon has since modified its TOT policy to "average TOT over an unspecified longer period of time" before disciplining employees. *Id.* ¶ 68.

Plaintiff alleges that the remaining factors involved in generating a Productivity Score are unknown, because Amazon "only reveals UPH and TOT metrics to an employee when issuing a written warning for productivity issues." *Id.* ¶ 7. Employees in the bottom 5% of the Productivity Score rankings each week, Plaintiff alleges, are then subject to discipline in the form of a written "productivity warning." *Id.* ¶¶ 9, 64. If an employee receives six written warnings of any type—or three productivity warnings—within a period of 12 months, that employee is subject to termination. *Id.* ¶ 69.

Safety Policies. Plaintiff claims Amazon enforces certain safety policies with respect to

working with the pods in the fulfillment centers. *Id.* ¶¶ 58–62.  For example, employees must not lift their arms above their heads to access an item on the pod. *Id.* ¶ 59.  Instead, each pod workstation includes a step ladder that "must be used to reach for bins or items that lie above the employee's head." *Id.* ¶ 60.  Failing to use the stepladder in this instance, Plaintiff alleges, "means that the employee is overreaching, which can subject an employee to discipline." *Id.*  After an employee has used the stepladder, the employee must push it back to a designated area within the pod's workstation because "leaving it out in front of the pod is considered a safety hazard, and the stepladder may be blocking the next bin to be accessed." *Id.*  If a bin is too high to reach even with the stepladder, employees call a Process Assistant to assist. *Id.* ¶ 62.  Plaintiff alleges that because "only one Process Assistant was assigned to each floor, they were hard to track down, and waiting for one could use up precious time." *Id.*

### C. Plaintiff's Experience Working at Amazon's Fulfillment Centers

Plaintiff is a five-foot-tall woman who worked for Amazon at its Fulfillment Center in Sacramento, California for about ten months beginning in September 2020 as a "picker and counter." FAC ¶ 71.  Plaintiff's job duties included scanning and picking items from bins organized on the pods. *Id.* ¶¶ 73, 48.  Plaintiff alleges that, being five feet tall, she was not able to pick and scan items at the top of each pod without assistance from a Process Assistant or violating the safety policy against overreaching for items over her head. *Id.* ¶ 73.  Plaintiff was reprimanded for failing to use a stepladder, which she claims she did to "meet the strict Productivity Score standards and stay out of the bottom 5% of Productivity Scores." *Id.*

Plaintiff further claims that Amazon's stepladder policy and the requirement that she call a Process Assistant to assist with items she could not reach with a ladder "forced [her] to spend more time completing the same tasks as other, taller employees, resulting in a lower average UPH measurement and a higher average TOT measurement, lowering her Productivity Scores." *Id.* ¶ 75.  After receiving six written warnings for failing to meet Amazon's Productivity Policy requirements, Plaintiff was terminated on July 8, 2021. *Id.* ¶ 86.

### D. Procedural History

On August 29, 2022, Plaintiff filed a putative class action complaint in the Superior Court

1    of the State of California, County of Santa Clara, Case No. 22-cv-403296, alleging claims for
2    (1) sex discrimination in violation of the FEHA, (2) failure to prevent sex discrimination in
3    violation of FEHA, and (3) unfair competition based on the FEHA violations.  ECF No. 1.  On
4    October 21, 2022, Amazon filed a notice of removal to this District.  *Id.*  On March 1, 2023,
5    Plaintiff filed the First Amended Complaint to assert an additional claim for sex discrimination in
6    violation of Title VII of the Civil Rights Act.  ECF No. 15.
7         Plaintiff brings these claims on behalf of herself and three putative classes of all female
8    Amazon warehouse employees who are "involved with processing 'pods'" and "who were subject
9    to Amazon's Quality and Productivity Performance Policy or practice."  FAC ¶ 29.  The first class
10   includes female employees in California during the period beginning three years to the filing of
11   the complaint, the second includes female employees in California during the period beginning
12   four years prior to the filing of the complaint, and the third includes female employees in the
13   United States during the "applicable limitations period".  *Id.* ¶¶ 28, 29.
14        On March 27, 2023, Amazon filed the instant motion to dismiss or strike the FAC.
15   ECF No. 19.  On April 17, 2023, Plaintiff filed an opposition to the instant motion (ECF No. 20
16   ("Opp.")), and Amazon filed a reply on May 1, 2023 (ECF No. 21 ("Reply")).

17   **II.    LEGAL STANDARD**
18        Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a
19   short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint
20   that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  Rule 8(a) requires a
21   plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*
22   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff
23   pleads factual content that allows the court to draw the reasonable inference that the defendant is
24   liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While a plaintiff
25   must allege "more than a sheer possibility that a defendant has acted unlawfully," the plausibility
26   standard "is not akin to a probability requirement." *Id.*
27        For purposes of ruling on a Rule 12(b)(6) motion, the Court generally "accept[s] factual
28   allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the

4

1  nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.
2  2008). The Court need not, however, "assume the truth of legal conclusions merely because they
3  are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011)
4  (per curiam). Mere "conclusory allegations of law and unwarranted inferences are insufficient to
5  defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

6  If the court concludes that a 12(b)(6) motion should be granted, the "court should grant
7  leave to amend even if no request to amend the pleading was made, unless it determines that the
8  pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d
9  1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III. DISCUSSION

### A. Request for Judicial Notice

As an initial matter, Amazon requests that the Court take judicial notice of the Order Granting Amazon's Motion to Dismiss Plaintiff Michele Obrien's Complaint, filed on April 1, 2022, in *Obrien v. Amazon*, Case No. 3:22-cv-00348 (N.D. Cal.). ECF No. 19-1. Plaintiff has not opposed this request. A court may take judicial notice of facts that are not subject to reasonable dispute because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006). Amazon's request is limited to an order submitted in the *Obrien v. Amazon* litigation and is readily verifiable.

Accordingly, the Court GRANTS Amazon's request for judicial notice.

### B. Disparate Impact Claim

Plaintiff's first cause of action asserts a violation of FEHA, and Plaintiff's fourth cause of action asserts a violation of Title VII of the Civil Rights Act. Both claims are based on a disparate impact theory. FAC ¶¶ 106–116, 135–145. "To establish a disparate impact claim, a plaintiff need not prove intent to discriminate, but must prove that 'regardless of motive, a *facially neutral employer practice or policy, bearing no manifest relationship to job requirements, in fact had a*

1   disproportionate adverse effect on members of the protected class.'" *Mahler v. Judicial Council of*
2   *Cal.*, 67 Cal. App. 5th 82, 112 (2021) (quoting *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 fn.
3   20 (2000)) (emphasis in original). Thus, "a plaintiff must demonstrate (1) the occurrence of
4   certain outwardly neutral employment practices, and (2) a significantly adverse or disproportionate
5   impact on persons of a particular [gender] produced by the employer's facially neutral acts or
6   practices." *Obrien v. Amazon.com Inc.*, No. 22-cv-00348-KAW, 2023 WL 2207893, at *3 (N.D.
7   Cal. Jan. 27, 2023) (citing *Stockwell v. City & Cty. of S.F.*, 749 F.3d 1107, 1114 (9th Cir. 2014)).
8   Amazon contends that Plaintiff's disparate impact claim fails because the FAC does not isolate
9   and identify a specific employment practice responsible for the purported disparate outcomes, nor
10  does she plead any facts to support an inference of causation. Mot. 8. The Court addresses each
11  in turn below.

### 1. Specific Employment Practice

In challenging an employer practice that causes a disproportionate impact, "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) (quotations omitted). Thus, a plaintiff "generally cannot attack an overall decision-making process in the disparate impact context, but must instead identify the particular element or practice within the process that causes an adverse impact." *Stout v. Potter*, 276 F.3d 1118, 1124 (9th Cir. 2002) (finding plaintiffs failed to identify a specific employment practice where the overall interview screening process at issue "included several discrete elements").

In *Smith*, plaintiffs challenged a pay plan that granted proportionately greater pay raises to employees with less than five years of tenure, arguing that the plan had a discriminatory impact on older employees. 544 U.S. at 231. The Supreme Court held that the plaintiffs failed to identify the specific practice being challenged, and that imposing liability for the pay plan in general could "result in employers being potentially liable for the myriad of innocent causes that may lead to statistical imbalances." *Id.* at 241 (quotations omitted). Additionally, the Court stressed that the

1    plaintiffs could not successfully challenge the plan as a whole because it "was based on reasonable
2    factors other than age." *Id.*

3          Amazon argues that, rather than identify a specific employment practice or policy, Plaintiff
4    attacks "a vague assemblage of 'policies, procedures and practices' that touch on virtually every
5    aspect of Amazon's warehouse operations, including but not limited to (i) 'the design . . of
6    Amazon's fulfillment centers,' (ii) the 'setup of Amazon's fulfillment centers,' (iii) Amazon's
7    'safety policies,' including Amazon's policies related to the use of stepladders and Process
8    Assistants to reach items located toward the top of pods, and (iv) Amazon's 'Quality and
9    Productivity Performance Policy,' which includes (v) daily productivity targets for employees, (vi)
10   employee rankings based on 'Units Per Hour,' and (vii) measuring 'Time Off Task.'" Mot. 8
11   (citing FAC ¶¶ 5–7, 29, 51, 58–62, 64–67). Plaintiff's disparate impact theory, Amazon argues, is
12   "unfocused" and relies on "generalized and amorphous allegations." Mot. 8.

13         Plaintiff responds that the Productivity Policy "is the policy that is alleged to disparately
14   impact Amazon's female warehouse employees." Opp. 1. Plaintiff defines the Productivity
15   Policy in paragraph 64 of the FAC as follows: "On a weekly basis, Amazon ranks the warehouse
16   employees by Productivity Scores, and those who are ranked in the bottom 5% are written up for
17   poor performance, regardless of how objectively well they performed or how closely their
18   performance compared to others." FAC ¶ 64. Plaintiff explains that her references in the FAC to
19   other metrics, including the UPH and the TOT, were included "in an effort to better illustrate how
20   the Productivity Score is derived by Amazon under its Productivity Policy." Opp. 3.

21         The Court agrees Plaintiff has not sufficiently identified a specific employment practice to
22   meet her burden at this stage. While Plaintiff purports to isolate Amazon's "Productivity Policy"
23   as the specific employment practice at issue, that policy—per Plaintiff's own allegations—applies
24   to an open-ended range of positions and is based on indeterminate number of factors that vary
25   depending on item, region, and other measures. *See* FAC ¶¶ 7 (Amazon "sets targets for
26   productivity each day" and the Productivity Score "takes into consideration, among other things,"
27   the UPH and TOT), 29 (identifying class members as those "including but not limited to pickers,
28   counters, and stowers" who "were subject to Amazon's Quality and Productivity Performance

1    Policy"), 63 (Amazon requires employees in its fulfillment center "to meet a quota" of items
2    processed hourly), 64 (Amazon uses "a suite of productivity metrics and disciplinary policies and
3    practices, and incentives to maintain the quotas" and Amazon's Productivity Policy entails
4    tracking all employees "based on several variables" including "undisclosed factors"), 66 (the
5    "UPH requirement is set regionally and also varies depending on the day or the type of item being
6    processed"), 67 (after accumulating a "certain amount" of TOT, employees are notified), 110
7    (alleging that Amazon's policies, "including but not limited to its policies or practices regarding
8    UPH, TOT, and Productivity Scores, in conjunction with the design of its pods and safety policies
9    and procedures at its fulfillment centers" have caused female employees to suffer disparate
10   impact), 112 (same), 139 (same), 141 (same).

     *Obrien v. Amazon.com* involved similar claims and similar alleged policies. 2023 WL
12   2207893 at *4. There, the court dismissed plaintiff's disparate impact claim against Amazon
13   where plaintiff was "challenging [Amazon]'s enforcement of its excessive quotas on older
14   workers." *Id.* The plaintiff challenged Amazon's productivity standards on the basis of age-
15   related physical differences between groups of employees. *Id.* The plaintiff alleged that
16   Amazon's various quota requirements for positions including stowers, pickers, and sorters have a
17   disparate impact on older warehouse workers because older workers are more likely to injure
18   themselves and are less strong than the younger employees. *Id.* at *1. In ultimately finding that
19   the plaintiff failed to identify a specific employment practice, the court took issue that the plaintiff
20   appeared "to be relying on every quota for every position," and it "was unclear whether every
21   quota is problematic or not." *Id.* at *4

22   While the allegations in *Obrien* overlap somewhat with Plaintiff's claims (for example,
23   both complaints describe the TOT system and Amazon's purported quota requirements), Plaintiff
24   seems to assert that the FAC here is distinct because it "specifically challenge[s]" Amazon's
25   Productivity Policy as the offending employment practice. Opp. 3. But Amazon's Productivity
26   Policy is tethered to the various metrics that suffer from the same issue as the disparate impact
27   claim in *Obrien*. For instance, the Productivity Policy "punish[es] the bottom 5% in Productivity
28   Scores on a weekly basis." Opp. 3 (citing FAC ¶¶ 17–18, 64–68). Plaintiff alleges that

8

1   Productivity Scores are generated using "a suite of productivity metrics and disciplinary policies
2   and practices, and incentives to maintain the quotas of its workforce," including the UPH, TOT,
3   and "other undisclosed factors to produce a numerical score which represents an employee's
4   productivity during a given period." FAC ¶ 64. In other words, a person could end up in the
5   bottom 5% of Productivity Scores as a result of any "suite of productivity metrics." *Id.* And
6   Plaintiff does not appear to challenge those specific, underlying productivity metrics. The FAC
7   alleges that Amazon expects employees to work at a rate of "approximately" 300 UPH, but that
8   number can vary based on the size of the item. *Id.* ¶ 66. So it is unclear when or why an
9   employee would be negatively impacted by the Productivity Policy. This is insufficiently general,
10  and Plaintiff fails to identify a specific employment practice.

11  Like the challenged policies in *Obrien*, Plaintiff "appears to be generally challenging the
12  monitoring and enforcement" of Amazon workers' productivity levels based on UPH, TOT, and
13  other undisclosed factors. *Obrien*, 2023 WL 2207893, at *4; *see also Durante v. Qualcomm, Inc.*,
14  144 Fed.Appx. 603, 606 (9th Cir. 2005) (quoting *Stout*, 276 F.3d at 1124) ("[p]laintiffs generally
15  cannot attack an overall decisionmaking process in the disparate impact context, but must instead
16  identify the particular element or practice within the process that causes an adverse impact");
17  *Merritt v. Countrywide Fin. Corp.*, No. 09-cv-01179-BLF, 2016 WL 6573989, at *12 (N.D. Cal.
18  June 29, 2016), *aff'd*, 783 F. App'x 717 (9th Cir. 2019) (complaint insufficient to support a
19  disparate impact theory where court could not "identify such a crisp policy in the [complaint],
20  which instead broadly alleges that [defendant] had 'unwritten policies'"); *Guerrero v. Cal. Dep't*
21  *of Corr. & Rehab.*, 119 F. Supp. 3d 1065, 1076–77 (N.D. Cal. 2015) (finding a plaintiff had
22  identified a specific selection criteria by challenging a certain question in an interview process),
23  *aff'd in part, rev'd in part on other grounds*, 701 F. App'x 613 (9th Cir. 2017).

24  Plaintiff also argues that *Obrien*, which involved age discrimination claims, is distinct
25  because "the mechanism of the disparate impact here is based upon a measurable, immutable
26  characteristic—an employee's adult height—which also has a well-measured disparity in
27  distribution between the sexes." Opp. 2. But Plaintiff does not explain why this makes any
28  meaningful difference in the disparate impact context. Just as "[a] person over 40 years of age

9

1  may suffer maladies or restrictions that may or may not be correlated with their age" (Opp. 2), a
2  person's height may or may not be correlated with their gender. Plaintiff also does not explain the
3  significance that a person's height "once they reach adulthood will never change for the most
4  part." Opp. 2. The FAC, like the complaint in *Obrien* "improperly rel[ies] on generalized
5  policies." *Obrien*, 2023 WL 2207893 at *4.

### 2. Causation

"A plaintiff who fails to allege facts at the pleading stage...demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 521 (2015). A plaintiff may satisfy this "robust causality requirement," *id.* at the pleading stage by alleging nonconclusory facts that, accepted as true, support a reasonable inference that the challenged practice caused a disparate impact. *Iqbal*, 556 U.S. at 678. Plaintiff may rely on personal experiences, such as an awareness that "female colleagues received lower performance evaluations despite performing as well as or better than their male peers," to establish disproportionate impact. *Liu v. Uber Techs. Inc.*, 551 F. Supp. 3d 988, 991 (N.D. Cal. 2021).

Amazon argues that Plaintiff failed to allege facts to support the causation element because Plaintiff "simply observes that women are shorter than men on average and that women therefore tend to have a lower Standing Vertical Grip Reach than men, FAC ¶¶ 88–93, and then asks the Court to leap to a series of completely unsupported conclusions." Mot. 10. Plaintiff alleges that "the female warehouse employees are disproportionately subject to adverse employment actions pursuant to that policy due primarily to their generally shorter stature compared to men." Opp. 6 (citing FAC ¶ 10).

The Court agrees with Amazon that Plaintiff fails to satisfy the causation showing for disparate impact liability. Plaintiff does not provide any statistical evidence demonstrating a disparate impact on female warehouse employees. Nor does she need to at this stage. *See Mahler*, 67 Cal. App. 5th at 114. But Plaintiff's anecdotal observations still fail to demonstrate the requisite causation to show a significant disparity between males and females. *See id.*

Plaintiff asserts that Amazon's Productivity Policy—ranking warehouse employees on a

10

1   weekly basis by Productivity Scores and writing up the bottom 5% for poor performance—has a
2   disproportionate impact on women because it results in women being disciplined at a higher rate
3   than men.  Opp. 5; FAC ¶ 64.  Throughout her employment, Plaintiff alleges she "would
4   continually observe female coworkers of similar height being written up for having lower
5   Productivity Scores and longer TOT scores."  FAC ¶ 85.  Plaintiff also "spoke with several
6   coworkers and noticed that the vast majority of those who were written up in accordance with
7   Productivity Policy were women."  *Id.*  However, similar to *Mahler*, these sparce allegations
8   concerning Plaintiff's experience at one warehouse over the course of ten months falls short of
9   plausibly showing a disparity, let alone a *significant* disparity, between female and male workers.
10  *See Mahler*, 67 Cal. App. at 115 (finding no casual connection and dismissing disparate impact
11  claim where complaint provided "no specifics" as to "the number of participants allegedly
12  adversely impacted," any "basic allegations of statistical methods and comparison," or "any
13  anecdotal information of a significant age-based disparity") (quotations omitted).  Given the scope
14  of the proposed class and Amazon's Productivity Policy at issue, Plaintiff's limited observations
15  are insufficient to demonstrate a causal connection between the challenged policy and a significant
16  disparate impact on the group.  *See* FAC ¶ 29 (the three proposed classes include "[a]ll [Amazon]
17  female employees who worked at Amazon's warehouses in California" in various positions during
18  various periods).  Even though a "discrimination claimant is free to supply as few anecdotes as he
19  wishes," when the claim "is that a company operates under a general policy of discrimination," a
20  few anecdotes is insufficient.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 358 (2011)
21  (considering the quantity of anecdotal evidence in light of the proposed class and policy
22  challenged).

23          Plaintiff's causation theory also appears flawed because "it depends on comparing
24  [disciplinary measures] for individuals who are stationed in different [warehouses] under different
25  conditions and who may be performing different tasks."  *Alhayoti v. Blinken*, No. 21-cv-07713-
26  LB, 2023 WL 4850179, at *8 (N.D. Cal. July 28, 2023) (finding plaintiff failed to plead plausible
27  disparate impact claim where plaintiff asserted that hiring category had a "disproportionate impact
28  on individuals based on their national origin because it results in lower pay for U.S. citizens if they

11

have the local national origin"). The women Plaintiff alleges she observed or spoke with could have been "written up" for any one of many reasons separate from their height or gender, including for longer Time Off Tasks, another metric involved in generating a Productivity Score, or another unknown reason. At a minimum, the FAC would benefit from additional detail regarding these personal observations. The FAC accordingly lacks facts that could support a plausible inference that a disparity between male and female warehouse workers exists and is caused by Amazon's Productivity Policy.

### C. FEHA Claim for Failure to Prevent Discrimination (Second Cause of Action) and California's Unfair Competition Law Claim (Third Cause of Action)

The parties agree that Plaintiff's FEHA claim for failure to prevent discrimination and Plaintiff's UCL claim in this case will rise and fall with Plaintiff's discrimination claims under FEHA. *See* Mot. 14; Opp. 8. Because the Court finds that Plaintiff has not sufficiently plead a disparate impact claim, Plaintiff's second and third claims fail as well.

### D. Class Action Allegations

Lastly, Amazon argues that the Court should dismiss or strike the class allegations because the FAC does not sufficiently allege that Plaintiff is similarly situated to all female Amazon warehouse employees. Mot. 15. Amazon argues, for example, "even if Plaintiff could plausibly allege that female employees were disproportionately affected by a specific practice related to the pods, there is no glue that holds Plaintiff together with female employees who, for example, did not fall in the lowest 5% of Productivity Scores, did not use stepladders or Process Assistants (or used them infrequently), or whose productivity and working conditions varied along countless variables that affect productivity, safety, and discipline in a complex warehouse work environment." Mot. 16. Plaintiff responds that she seeks to represent "female employees of Amazon who worked on 'pods' and who suffered adverse actions under Amazon's Productivity Policy." Opp. 9. Plaintiff asserts that, because she "shares all of these characteristics with the putative class members," the FAC has plausibly alleged commonality. Opp. 9.

Because the Court has dismissed all the claims in this case, the Court need not reach this

argument.[1]

## IV. CONCLUSION

Based on the foregoing, the Court GRANTS Amazon's motion to dismiss with leave to amend. Any amended complaint shall be filed by February 29, 2024.

**IT IS SO ORDERED.**

Dated: January 30, 2024

Edward J. Davila
United States District Judge

---

[1] The Court notes that "a growing number of courts (including this one) generally disfavor motions to strike, finding that they 'serve little useful purpose in modern federal practice, and are often wielded mainly to cause delay and inflict needless burdens on opposing parties.'" *Borodaenko v. Twitter, Inc.*, No. 22-cv-07226-HSG, 2023 WL 3294581, at *5 (N.D. Cal. May 5, 2023) (quoting *Stiner v. Brookdale Senior Living, Inc.*, 354 F. Supp. 3d 1046, 1063, n.7 (N.D. Cal. 2019)).

13