MORGAN, LEWIS & BOCKIUS LLP
Brian D. Berry, Bar No. 229893
Sarah Zenewicz, Bar No. 258068
Roshni C. Kapoor, Bar No. 310612
One Market
Spear Street Tower
San Francisco, CA  94105-1596
Tel:     +1.415.442.1000
Fax:    +1.415.442.1001
brian.berry@morganlewis.com
sarah.zenewicz@morganlewis.com
roshni.kapoor@morganlewis.com

Attorneys for Defendant
AMAZON.COM SERVICES LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY FUJISHIGE, on behalf of herself and all others similarly situated,<br><br>               Plaintiff,<br><br>          vs.<br><br>AMAZON.COM SERVICES LLC, a Delaware limited liability corporation, and DOES 1 through 50, inclusive,<br><br>             Defendants. | Case No. 5:22-cv-06397-EJD<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   May 30, 2024<br>Time:  9:00 a.m.<br>Courtroom:  4, Fifth Floor<br>Hon. Edward J. Davila<br><br>Action Filed: August 29, 2022<br>Removed:        October 21, 2022<br>SAC Filed:      February 29, 2024 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

Case No. 5:22-cv-06397-EJD

DEFENDANT'S MOTION TO DISMISS THE SAC

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that on May 30, 2024, at 9:00 a.m., or as soon thereafter as counsel may be heard before the Honorable Edward J. Davila of the San Jose Courthouse of the above-entitled court, located at 280 South 1st Street, San Jose, CA 95113, Defendant Amazon.com Services LLC ("Amazon") will, and hereby does, move this Court, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), for an order dismissing Plaintiff Amy Fujishige's Second Amended Complaint ("SAC") for failure to state a claim upon which relief can be granted, based on the following grounds:

1.     Plaintiff's First Cause of Action for Sex Discrimination in Violation of the Fair Employment and Housing Act ("FEHA") and Fourth Cause of Action for Sex Discrimination in Violation of Title VII of the Civil Rights Act, as amended by the Civil Rights Act of 1990 (42 U.S.C. § 2000e, *et seq.*), fail to state a claim in accordance with Rule 8 because Plaintiff does not set forth factual allegations sufficient to plausibly suggest Amazon discriminated against her because of her sex.

2.     Plaintiff's Second Cause of Action for Failure to Prevent Sex Discrimination Under FEHA fails to state a claim in accordance with Rule 8 because Plaintiff does not set forth factual allegations sufficient to plausibly suggest that Amazon failed to prevent or correct sex discrimination.

3.     Plaintiff's Third Cause of Action under California's Unfair Competition Law ("UCL") fails to state a claim because Plaintiff does not allege a violation of FEHA or Title VII and does not have standing to seek equitable relief.

4.     Plaintiff fails to state any class claims because Plaintiff does not set forth factual allegations sufficient to plausibly suggest that she is similarly situated to the putative class she purports to represent.

Amazon requests that the Court dismiss the SAC in its entirety without leave to amend.

This Motion to Dismiss is based on this Notice of Motion, the Memorandum of Points and Authorities, the Request for Judicial Notice, the pleadings on file herein and such arguments and admissible evidence as may be presented at the time of hearing.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2                                    Case No. 5:22-cv-06397-EJD
DEFENDANT'S MOTION TO DISMISS THE SAC

1

2

Dated: March 28, 2024                                    MORGAN, LEWIS & BOCKIUS LLP

3

4                                                        By  /s/ Brian D. Berry
                                                             Brian D. Berry
5                                                            Sarah Zenewicz
                                                             Roshni C. Kapoor
6                                                            Attorneys for Defendant
                                                             AMAZON.COM SERVICES LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3                                    Case No. 5:22-cv-06397-EJD
DEFENDANT'S MOTION TO DISMISS THE SAC

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   SUMMARY OF ALLEGATIONS AND PROCEDURAL HISTORY ......................... 2

    A.    The Court's Order Dismissing the FAC ..................................................... 2

        1.    The FAC Failed to Isolate and Identify a Specific Practice. ....................... 2

        2.    The FAC Failed to Allege a Sex-Based Disparity. ....................... 4

        3.    The FAC Failed to Allege Causation. ....................... 4

    B.    The SAC Alleges Substantially the Same Facts as the FAC. ....................... 5

        1.    Like the FAC, the SAC Postulates That Women Who Work on Pods Are Less Productive than Men Because They Tend to Be Shorter. ....................... 5

        2.    The SAC Challenges the Same Generalized Practice as the FAC. ....................... 7

        3.    The SAC Cites Irrelevant Data on Amazon Workforce Demographics. ....................... 7

        4.    The SAC Adds Insignificant Details to Plaintiff's Anecdotes. ....................... 8

III.   LEGAL STANDARD ....................................................................................... 8

IV.   ARGUMENT ................................................................................................... 9

    A.    The SAC Fails to Plausibly Plead a Disparate Impact Claim. ....................... 9

        1.    The SAC Fails to Isolate and Identify a Specific Employment Practice. ....................... 10

        2.    The SAC Fails to Plausibly Plead a Sex-Based Disparity. ....................... 14

            a.    The SAC's "Statistics" Are Meaningless. ....................... 14

            b.    Plaintiff's Anecdotes Are Insufficient. ....................... 16

        3.    The SAC Fails to Plausibly Plead Causation Between the Challenged Practice and the Alleged Sex-Based Disparity. ....................... 18

    B.    Plaintiff's Derivative Claims Fail. ....................... 20

    C.    Plaintiff Fails to Plausibly Plead Class Claims. ....................... 21

V.    CONCLUSION ................................................................................................. 23

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 5:22-cv-06397-EJD

DEFENDANT'S MOTION TO DISMISS THE SAC

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Abdul-Haqq v. Kaiser Emergency in San Leandro*
   2017 WL 1549480 (N.D. Cal. May 1, 2017) .......................................................................... 20

*Airy v. City of Hesperia*
   2019 WL 8017811 (C.D. Cal. Sept. 13, 2019)....................................................................... 20

*Alvarado v. Wal-mart Assocs., Inc.*
   2020 WL 6526372 (C.D. Cal. Aug. 7, 2020) ......................................................................... 22

*Am. Fed'n of State, Cty., & Mun. Emps., AFL-CIO (AFSCME) v. State of Wash.*
   770 F.2d 1401 (9th Cir. 1985)................................................................................................. 10

*Asencio v. Miller Brewing Co.*
   283 F. App'x 559 (9th Cir. 2008) ........................................................................................... 20

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009).............................................................................................................. 8, 13

*Ayala v. Frito Lay, Inc.*
   263 F. Supp. 3d 891 (E.D. Cal. 2017).................................................................................... 20

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007)................................................................................................................ 8, 9

*Brown v. FPI Mgmt., Inc.*
   2012 WL 629182 (N.D. Cal. Feb. 27, 2012).......................................................................... 17

*Bush v. Vaco Tech. Svcs., LLC*
   2019 WL 3290654 (N.D. Cal. July 22, 2019) ........................................................................ 22

*Byrd v. Masonite Corp.*
   2016 WL 756523 (C.D. Cal. Feb. 25, 2016)........................................................................... 22

*Cole v. Sunnyvale*
   2010 WL 532428 (N.D. Cal. Feb. 9, 2010)............................................................................ 13

*Durante v. Qualcomm, Inc.*
   144 F. App'x 603 (9th Cir. 2005) ........................................................................................... 10

*Filho v. Gansen*
   2018 WL 5291986 (N.D. Cal. Oct. 19, 2018)........................................................................ 17

*Fragada v. United Airlines, Inc.*
   2017 WL 4586933 (C.D. Cal. June 13, 2017) ....................................................................... 20

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

Case No. 5:22-cv-06397-EJD

DEFENDANT'S MOTION TO DISMISS THE SAC

*Freyd v. Univ. of Oregon*
   990 F.3d 1211 (9th Cir. 2021)........................................................................................... 13, 14

*Hicks v. Netflix, Inc.*
   2020 WL 2463380 (C.D. Cal. Mar. 19, 2020) ...................................................................... 20

*In re Stac Elecs. Sec. Litig.*
   89 F.3d 1399 (9th Cir. 1996).................................................................................................... 9

*Jue v. Costco Wholesale Corp.*
   2010 WL 889284 (N.D. Cal. Mar. 11, 2010) ....................................................................... 21

*Meacham v. Knolls Atomic Power Lab.*
   554 U.S. 84 (2008) ................................................................................................................ 10

*Mendiondo v. Centinela Hosp. Med. Ctr.*
   521 F.3d 1097 (9th Cir. 2008).................................................................................................. 9

*Mish v. TForce Freight, Inc.*
   2021 WL 4592124 (N.D. Cal. Oct. 6, 2021) ..................................................................... 9, 22

*Mora v. US Bank*
   2015 WL 4537218 (C.D. Cal. July 27, 2015) ...................................................................... 17

*Moss v. U.S. Secret Serv.*
   572 F.3d 962 (9th Cir. 2009).................................................................................................... 8

*Obrien v. Amazon.com Inc.*
   2023 WL 2207893 (N.D. Cal. Jan 27, 2023) ............................................................... passim

*Smith v. City of Jackson*
   544 U.S. 228 (2005) ........................................................................................................ 10, 14

*Stanislaus Food Prod. Co. v. USS-POSCO Indus.*
   782 F. Supp. 2d 1059 (E.D. Cal. 2011)................................................................................. 13

*Starr v. Baca*
   652 F.3d 1202 (9th Cir. 2011).................................................................................................. 9

*Stockwell v. City & Cty. of S.F.*
   749 F.3d 1107 (9th Cir. 2014).......................................................................................... 10, 14

*Stout v. Potter*
   276 F.3d 1118 (9th Cir. 2002).......................................................................................... 10, 14

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*
   576 U.S. 519 (2015) .............................................................................................................. 18

*W. Mining Council v. Watt*
   643 F.2d 618 (9th Cir. 1981).................................................................................................... 9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S MOTION TO DISMISS THE SAC

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338 (2011) ................................................................................. 16, 17, 20, 21

*Wards Cove Packing Co. v. Atonio*
    490 U.S. 642 (1989) ................................................................................. 10, 14

*Watson v. Fort Worth Bank & Tr.*
    487 U.S. 977 (1988) ................................................................................. 10, 18

*Zamora v. Penske Truck Leasing Co., L.P.*
    2021 WL 809403 (C.D. Cal. Mar. 3, 2021) ............................................. 9, 21, 22

**CALIFORNIA CASES**

*Mahler v. Jud. Council of Cal.*
    67 Cal. App. 5th 82 (2021) ...................................................................... 9, 16, 18

*Trujillo v. North County Transit Dist.*
    63 Cal. App. 4th 280 (1998) .................................................................... 20

**CALIFORNIA STATUTES**

Cal. Bus. & Prof. Code § 17200 ..................................................................... 2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ................................................................................. 8, 9, 13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 5:22-cv-06397-EJD

DEFENDANT'S MOTION TO DISMISS THE SAC

## I.    INTRODUCTION

Armed with nothing but her observation that women tend to be shorter than men, Plaintiff Amy Fujishige purports to allege a disparate impact claim based on her speculation that Defendant Amazon.com Services LLC's ("Amazon") disciplines and ultimately terminates women in greater proportion than men at its fulfillment centers across the country.  The Court dismissed the same claim in her First Amended Complaint ("FAC") because Plaintiff did not isolate and identify a specific employment policy or practice, allege a significant disparity in discipline between males and females, or demonstrate a causal link between the two.  The Court should now dismiss the SAC because it cures none of the defects in her pleading.

The SAC includes no meaningful amendment.  It simply re-labels the collection of policies, practices, and procedures that Plaintiff purports to challenge—now collecting them under the label "Stack Raking Policy" rather than "Productivity Policy"—and deletes various allegations that the Court cited when dismissing the FAC.  But those amendments are mere window dressing.  They do not change the substance of the FAC's failed allegations and therefore do nothing to cure its deficiencies.

The SAC invokes irrelevant data about the workforce demographics for Amazon's overall U.S. workforce and a few pay equity reports from many years ago on Amazon's senior leaders. But none of Plaintiff's figures have any bearing on the relevant population of pickers, counters, and stowers who work on pods at Amazon warehouses, and Plaintiff also misconstrues the workforce data that the SAC references.

In a half-hearted effort to bolster her anecdotal allegations, the SAC adds a few immaterial notes about Plaintiff's observations while working for ten months at one Amazon warehouse in Sacramento.  Like the SAC's other amendments, however, Plaintiff's amendments to her smattering of anecdotal allegations do nothing to remedy the FAC's shortcomings.  Considering the massive scope of her disparate impact claim, Plaintiff's limited and generic observations do not support a plausible inference of a sex-based disparity, let alone a significant disparity.  Nor do her anecdotes (or any other amendment) support an inference of causation, which leaves the inferential leaps that Plaintiff asks the Court to make—from gender, to height, to pod design, to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1                                    Case No. 5:22-cv-06397-EJD
DEFENDANT'S MOTION TO DISMISS THE SAC

safety policies, to productivity assistance, to productivity metrics, to disciplinary practices—wholly unsupported and speculative.

The SAC also makes no changes to Plaintiff's derivative claims for failure to prevent under FEHA or for violation of the unfair competition law. Those claims again fail alongside Plaintiff's disparate impact claims.

The Court should grant Amazon's motion to dismiss, and this time it should do so with prejudice.

## II.     SUMMARY OF ALLEGATIONS AND PROCEDURAL HISTORY

### A.     The Court's Order Dismissing the FAC.

On March 1, 2023, Plaintiff filed her First Amended Class Action Complaint ("FAC") alleging a disparate impact claim under Title VII of the Civil Rights Act and the California Fair Employment and Housing Act ("FEHA"). According to the FAC, Amazon's "Quality and Productivity Performance Policy" has a disparate impact on female workers at Amazon who are "involved with processing 'pods'" because of female workers' "generally shorter stature." FAC ¶¶ 4, 29, 111, 139. The FAC also alleged derivative claims of failure to prevent sex discrimination in violation of FEHA and unfair competition in violation of the Cal. Bus. & Prof. Code § 17200 ("UCL").[1]

On January 30, 2024, the Court granted Amazon's motion to dismiss the FAC for failure to state a claim. ECF No. 25 ("Dismissal Order"). Plaintiff failed to state a plausible disparate impact claim under FEHA and Title VII because she had not identified a specific employment practice, alleged a disparity between females and males, or alleged causation between the two. *Id.* The Court also dismissed Plaintiffs' derivative claims. *Id.*

### 1.     The FAC Failed to Isolate and Identify a Specific Practice.

In the FAC, Plaintiff alleged that Amazon has a "Productivity Policy" that involves "tracking employees 'based on several variables,'" "rank[ing] warehouse employees by their

---

[1] Plaintiff's original Class Action Complaint alleged the same claims except for Title VII sex discrimination, which was added in the FAC. *See* ECF No. 1.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2                                    Case No. 5:22-cv-06397-EJD
DEFENDANT'S MOTION TO DISMISS THE SAC

'Productivity Score' on a weekly basis," and then disciplining the "[e]mployees in the bottom 5% of the Productivity Score rankings each week." Dismissal Order at 2 (quoting FAC). Per the FAC, an employee's Productivity Score is based in part on the employee's "Units Per Hour" or "UPH," which measures the hourly rate of production, whether units are "stowed away in pods, counted for inventory, or picked for shipping to customers." *Id.* at 2. The Productivity Score is also based on the "amount of time employees spend 'off task' (i.e., not scanning units)," known as "Time Off Task" or "TOT." *Id.* Plaintiff alleged in the FAC that the "remaining factors involved in generating a Productivity Score [are] unknown." *Id.* Ultimately, "six written warnings of any type—or three productivity warnings" within a 12-month period leads to employment termination. *Id.* at 2:25-27.

The Court held the FAC failed to "sufficiently identif[y] a specific employment practice" to plead a disparate impact claim. Dismissal Order at 7:21-22; *see also id.* 9:9-10 (same). The Court held that while Plaintiff "purports to isolate Amazon's 'Productivity Policy,'" in actuality, the FAC was "generally challenging the monitoring and enforcement" of worker productivity levels "based on UPH, TOT, and other undisclosed factors" to produce a numerical score which represents an employee's productivity. *Id.* at 9:11-13 (quoting *Obrien v. Amazon.com Inc.*, 2023 WL 2207893 (N.D. Cal. Jan 27, 2023)).[2] But since Plaintiff "d[id] not appear to challenge those specific, underlying productivity metrics," the Court observed it was "unclear when or why an employee would be negatively impacted by the Productivity Policy." *Id.* at 9:6-9. In sum, Plaintiff's challenge was "insufficiently general" for a disparate impact claim. *Id.* at 9:9-10; *see*

---

[2] *See also id.* at 8:26 (Productivity Policy is "tethered to [] various metrics" like UPH, TOT); *id.* at 8:4 (quoting allegation that Productivity Policy entails tracking employees "based on several variables" including "undisclosed factors"); *see also id.* at 7:22-25 (Productivity Policy is "based on indeterminate number of factors that vary depending on item, region, and other measures"); *id.* at 9:1-2 (quoting FAC that Productivity Scores are generated using "a suite of productivity metrics and disciplinary policies and practices, and incentives to maintain the quotas" including UPH, TOT, and other factors).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

Case No. 5:22-cv-06397-EJD

DEFENDANT'S MOTION TO DISMISS THE SAC

*also id.* at 10:4-5 (concluding that the FAC "improperly relies on generalized policies," quoting *Obrien,* 2023 WL 2207893, at *4).[3]

### 2.   The FAC Failed to Allege a Sex-Based Disparity.

Plaintiff alleged in the FAC that she "would continually observe female workers of similar height" as her "being written up for having lower Productivity Scores and longer TOT scores." Dismissal Order at 11:3-9.  The FAC similarly asserted that Plaintiff "spoke with several coworkers and noticed that the vast majority of those who were written up" under the Productivity Policy "were women." *Id.*  The FAC relied on those anecdotal observations alone to support an inference of a significant gender-based disparity because the FAC did "not provide any statistical evidence demonstrating a disparate impact on female warehouse employees." *Id.* at 10:24-25.

But Plaintiff's "sparce" anecdotes were limited to "Plaintiff's experience at one warehouse over the course of ten months" and fell short of "plausibly showing a disparity, let alone a *significant* disparity, between female and male workers" at Amazon.  Dismissal Order at 11:7-9; *see also id.* at 12:5-7 ("The FAC . . . lacks facts that could support a plausible inference that a disparity between male and female warehouse workers exists.").

### 3.   The FAC Failed to Allege Causation.

The Court held that the FAC's "limited" anecdotal observations about other women receiving discipline were also "insufficient to demonstrate a causal connection" between the Productivity Policy and any purported impact on male versus female workers.  Dismissal Order at 13-16.  The FAC lacked detail about Amazon's reasons for disciplining Plaintiff's female co-workers, thus failing to plausibly plead that it was their shorter stature that landed them in the bottom 5% of employee performance.  Rather, the Court observed, the "women Plaintiff alleges

---

[3] The Court also highlighted that the Productivity Policy was insufficiently general because it "applies to an open-ended range of positions" and Plaintiff defined class members as those "including but not limited to pickers, counters, and stowers."  Dismissal Order at 7:24.  In response, the SAC limits the class to "pickers, counters, and/or stowers" only.  SAC ¶ 29.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4                                          Case No. 5:22-cv-06397-EJD
DEFENDANT'S MOTION TO DISMISS THE SAC

she observed or spoke with could have been 'written up' for any one of many reasons separate from their height or gender," including for TOT or "another unknown reason." *Id.* at 12:1-7.

The FAC's "causation theory" also is "flawed," the Court found, because it "depends on comparing [disciplinary measures] for individuals who are stationed in different [warehouses] under different conditions and who may be performing different tasks." Dismissal Order at 11:23-25 (alterations in original). Plaintiff's sparse allegations from "Plaintiff's experience at one warehouse over the course of ten months" were "insufficient" to show causation given the "scope of the proposed class and Amazon's Productivity Policy at issue." *Id.* at 11:13-22; *see also id.* at 10:26-11:9 (summarizing Plaintiff's allegations and holding the "anecdotal observations still fail to demonstrate the requisite causation . . . ."); *id.* at 12:1-7 ("The FAC lacks facts that could support a plausible inference" that any purported disparity "is caused by Amazon's Productivity Policy.").

### B.    The SAC Alleges Substantially the Same Facts as the FAC.

On February 29, 2024, Plaintiff filed her Second Amended Complaint, alleging the same four claims as the FAC based on substantially the same allegations. ECF No. 26 ("SAC").

#### 1.    Like the FAC, the SAC Postulates That Women Who Work on Pods Are Less Productive than Men Because They Tend to Be Shorter.

Plaintiff alleges she is a five-foot-tall woman who worked at an Amazon fulfillment center in Sacramento, California, as a "picker and counter," from September 16, 2020, until her termination on July 8, 2021. SAC ¶¶ 71, 84, 89. According to Plaintiff, her job duties as a picker and a counter required her to work with eight-foot-tall movable storage "pods" with compartment bins containing the products that she removed and scanned to fulfill client orders (as a "picker") or scanned for inventory purposes (as a "counter"). *Id.* ¶¶ 50-51, 56-57; *see also* Dismissal Order at 1-2 (summarizing job duties and pod processes).

Like the FAC, the SAC alleges that employees receive "Productivity Scores" from Amazon and that those scores incorporate an employee's UPH and TOT. SAC ¶ 7. Employees in the bottom 5% of the Productivity Score rankings each week are disciplined with a written warning. *Id.* ¶ 9. Three productivity warnings—or six written warnings of any type—within 12

months leads to termination.  *Id.*  Plaintiff names this productivity-based ranking and discipline practice, along with the "procedures associated with Amazon's 'pods,' and the safety policies" related to reaching for items when working with the pod, the "Stack Ranking Policy." *Id.* ¶¶ 5, 9.[4]

Plaintiff blames her poor performance on her "shorter stature."  *Id*. ¶ 51.  She explains that to reach items stored in the highest bins in the pod, she either needed to use an "industrial stepladder" (which Amazon required her to use in a safe manner by "using 3 points of contact at all times" and to safely store when not in use) or ask for assistance from a Process Assistant to reach items on high shelves.  *Id.* ¶¶ 6, 51-53.  Plaintiff emphasizes that Amazon required her to use a stepladder or the Process Assistant when accessing higher bins because Amazon prohibits "overreaching," that is, lifting one's arms above their head to retrieve or place an item, as a safety precaution to guard against physical injuries.  *Id.* ¶ 77.

Plaintiff concludes that, because the safety policies required her to occasionally use a stepladder or seek assistance from a Process Assistant, she was "forced to spend more time completing the same tasks as other, taller employees," *Id.* ¶¶ 51-52.  But the SAC (like the FAC) is devoid of any explanatory or supporting allegations for this conclusion.  For instance, the SAC contains no allegations about the time she or others spent on a particular task, any purported sex-based differences in UPH or TOT, differences across positions or facilities, or generally why or how an incremental average height difference of 5.5 inches between men and women results in a statistically significant disparity for reaching different compartments across the length of an eight-foot pod.  *See* SAC ¶¶ 88-92 (citing average height and "standing vertical grip reach" differences between men and women).  Plaintiff also does not address the "advantage" that females may have over males because of their height, for example, less time bending or squatting to reach the lower items.  *See, e.g.*, SAC ¶¶ 8, 56 (alleging taller people have "advantage" in "achieving higher Productivity Scores" but noting that manager noted "problems that a taller

---

[4] The SAC alleges that Amazon terminated Plaintiff after she received six warnings for "failing to meet the requirements of Amazon's Stack Ranking Policy," *id*. ¶ 63, even though three productivity warnings subject employees to termination according to the SAC.  SAC ¶ 9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6                                    Case No. 5:22-cv-06397-EJD
DEFENDANT'S MOTION TO DISMISS THE SAC

1    person could have reaching lower-placed items").

2                    **2.      The SAC Challenges the Same Generalized Practice as the FAC.**

3            The changes to the SAC are superficial.  Plaintiff globally edited the SAC to refer to the

4    "Stack Ranking Policy" rather than the "Productivity Policy."  *See, e.g.*, ECF No. 26 Ex. D

5    (redline between FAC and SAC) ¶¶ 5, 9, 29, 39, 40.  But the substance of her allegations remains

6    the same.  Under the general rubric of the "Stack Ranking Policy," she maintains the FAC's

7    challenge to the same assemblage of safety, operational, and disciplinary policies and practices—

8    including the "design and set up" of the Fulfillment centers, the "procedures associated with

9    Amazon's 'pods,'" Amazon's "safety policies," Amazon's policy related to manager assistance

10   with productivity barriers, variable TOT and UPH metrics, and other unidentified productivity-

11   related metrics—that ultimately result in a weekly ranking of employees.  SAC ¶¶ 5-7, 49, 54,

12   77-83.

13           The SAC also deletes several allegations that the Court identified in its Dismissal Order.

14   For instance, instead of expressly alleging that the Stack Ranking Policy is premised on a "suite"

15   of productivity metrics including "several" variables and "undisclosed" factors "among other

16   things," the SAC now asserts that UPH is the "primary factor" and TOT is the "secondary factor"

17   in the Productivity Score, while simply omitting any reference to other factors.  *Compare* SAC ¶¶

18   7, 82, 83 *with* FAC ¶¶ 7, 64.  The SAC also deletes the FAC's allegation that UPH varies by

19   region, day, and type of item.  *Compare* SAC ¶ 82 *with* FAC ¶ 66 (recognizing Amazon has

20   "power to adjust UPH expectations" but no further detail in SAC).  As a result, the SAC now

21   appears to suggest that the Productivity Score is limited to considerations of UPH and TOT.  But

22   that suggestion is belied not only by the many allegations in the FAC that specifically reference

23   other factors, *see* Dismissal Order at 7-9, but also by the SAC's allegation that "Plaintiff was

24   never informed of all the factors that are weighed to produce Productivity Scores," SAC ¶ 49; *see*

25   *also* FAC ¶ 7 (same), and that "Amazon does not disclose any of the other factors considered in

26   Productivity Scores,"  SAC ¶ 7; FAC ¶ 7.

27                    **3.      The SAC Cites Irrelevant Data on Amazon Workforce Demographics.**

28           The SAC notes that the percentage of women in Amazon's overall workforce declined by

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7                                          Case No. 5:22-cv-06397-EJD
DEFENDANT'S MOTION TO DISMISS THE SAC

1.5% from 2020 to 2022.  SAC ¶ 100.  The SAC also cites a *New York Times* article from ten years ago reporting that Amazon's senior leadership was predominantly male, as well as a private investment firm's pay equity "Scorecard" from six years ago that gave Amazon a "C" grade.  SAC ¶ 100.  None of these reports purport to have a nexus to productivity rankings or to pickers, counters, and stowers at Amazon's warehouses.

### 4. The SAC Adds Insignificant Details to Plaintiff's Anecdotes.

The SAC adds a few factual allegations about Plaintiff's observations and experiences working for 10 months at a Fulfillment Center in Sacramento.  The SAC repeats the FAC's allegation that Plaintiff "would continually observe" shorter female workers "being written up for having lower Productivity Scores and longer TOT scores," and that Plaintiff "spoke with several co-workers and noticed that the vast majority of those who were written up . . . were women."  SAC ¶ 62; *see also* Order at 11:3-9, FAC ¶ 85 (same).  The SAC adds that Plaintiff "observed mostly women in the outbound area, and they were generally shorter in stature."  SAC ¶ 62.  She also adds that one female co-worker (in an unknown position) who is "slightly shorter" than Plaintiff had been "written up twice pursuant to Amazon's Stack Ranking Policy," and that another female co-worker (of unknown height) "was reprimanded by her manager because of her 'pick rate.'"  *Id.* ¶ 62.

## III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint's allegations.  A court must dismiss a claim unless the complaint articulates "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6).  The "plausibility standard is not akin to a 'probability requirement,' but rather, it asks for more than a sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556-57).  A complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("[B]are assertions . . . amounting to nothing more than a 'formulaic recitation of the elements'"

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

Case No. 5:22-cv-06397-EJD
DEFENDANT'S MOTION TO DISMISS THE SAC

1   of a claim "are not entitled to an assumption of truth") (quoting *Iqbal*, 556 U.S. at 681).

2   Therefore, the Court may not "assume the truth of legal conclusions merely because they are cast

3   in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981);

4   *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (holding that "[c]onclusory

5   allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for

6   failure to state a claim.").

7         The Court considers whether the pleading's "factual content . . . allows the court to draw

8   the reasonable inference that the defendant is liable for the misconduct alleged," such that "it is

9   not unfair to require the opposing party to be subjected to the expense of discovery and continued

10  litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Dismissal is required when a

11  complaint lacks a cognizable legal theory or fails to allege facts sufficient to support a cognizable

12  legal theory.  *Twombly*, 550 U.S. at 555; *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d

13  1097, 1104 (9th Cir. 2008); Fed. R. Civ. P. 12(b)(6).

14        In a putative class action, the plausibility standard under *Twombly* applies not only to the

15  named plaintiff's individual claims, but also to the class claims.  *Mish v. TForce Freight, Inc.*,

16  2021 WL 4592124, at *8 (N.D. Cal. Oct. 6, 2021) (observing that "district courts do dismiss class

17  allegations on a 12(b)(6) motion, applying the *Twombly/Iqbal* standard, where the complaint

18  lacks *any* factual allegations and reasonable inferences that establish the plausibility of class

19  allegations," and dismissing class allegations); *Zamora v. Penske Truck Leasing Co., L.P.*, 2021

20  WL 809403, at *3 (C.D. Cal. Mar. 3, 2021) (dismissing class claims because "Plaintiffs do not

21  assert any factual support for their class allegations . . . Plaintiffs cannot point to a fish in the surf

22  to force Defendant on a deep-sea charter [of class discovery]").

23  **IV.    ARGUMENT**

24      **A.    <u>The SAC Fails to Plausibly Plead a Disparate Impact Claim.</u>**

25        Plaintiff's First and Fourth Claims assert sex-based disparate claims under Title VII and

26  FEHA.  To establish a disparate impact claim, a plaintiff "must prove that 'regardless of motive, a

27  *facially neutral* employer practice or policy, bearing no manifest relationship to job requirements,

28  in fact had a disproportionate adverse effect on members of the protected class.'"  Dismissal

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9                    Case No. 5:22-cv-06397-EJD
DEFENDANT'S MOTION TO DISMISS THE SAC

Order at 5-6 (quoting *Mahler v. Jud. Council of Cal.*, 67 Cal. App. 5th 82, 113 (2021)).

Accordingly, a plaintiff must demonstrate (1) the occurrence of a certain outwardly neutral

employment practices; (2) a significantly adverse or disproportionate impact on persons of a

particular [gender]; and (3) that the employer's facially neutrally employment practice caused the

significant gender disparity.  *See id.* at 6 (quoting *Obrien*, 2023 WL 2207893, at *3 (N.D. Cal.

Jan. 27, 2023) (citing *Stockwell v. City & Cty. of S.F.*, 749 F.3d 1107, 1114 (9th Cir. 2014))); *see*

*also Stout v. Potter*, 276 F.3d 1118, 1122 (9th Cir. 2002) ("A prima facie case of disparate impact

is 'usually accomplished by statistical evidence'… the 'statistical disparities must be sufficiently

substantial that they raise such an inference of causation.'").

Plaintiff's disparate impact claims fail because she does not (i) isolate and identify a

specific employment practice, (ii) allege facts supporting a plausible inference of a gender

disparity between male and female warehouse workers at Amazon, or (iii) allege facts that

plausibly support an inference of causation.

### 1.    The SAC Fails to Isolate and Identify a Specific Employment Practice.

As the Court explained when dismissing Plaintiff's FAC, "it is not enough to simply

allege that there is a disparate impact on workers or point to a generalized policy that leads to

such an impact.  Rather, the employee is responsible for isolating and identifying the specific

employment practices that are allegedly responsible for any observed statistical disparities."

Dismissal Order at 6 (quoting *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005)); *see also*

*Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989) (same)); *Watson v. Fort Worth*

*Bank & Tr.*, 487 U.S. 977, 994 (1988) (explaining that the "plaintiff must begin by identifying the

specific employment practice that is challenged" in a disparate impact claim under Title VII);

*Stockwell*, 749 F.3d at 1114 (quoting *Smith* and *Wards Cove*).  The Ninth Circuit has stressed that

identifying a specific practice is "not a trivial burden" and that this requirement "has bite."

*Stockwell*, 749 F.3d at 1114 (quoting *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 101

(2008).  As a result, "[p]laintiffs generally cannot attack an overall decisionmaking process in

the disparate impact context, but must instead identify the particular element or practice within

the process that causes an adverse impact."  *Durante v. Qualcomm, Inc.*, 144 F. App'x 603, 606

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10                                    Case No. 5:22-cv-06397-EJD
DEFENDANT'S MOTION TO DISMISS THE SAC

1   (9th Cir. 2005) (quoting *Stout*, 276 F.3d at 1124); *Am. Fed'n of State, Cty., & Mun. Emps., AFL-*

2   *CIO (AFSCME) v. State of Wash.*, 770 F.2d 1401, 1405 (9th Cir. 1985) ("Disparate impact

3   analysis is confined to cases that challenge a specific, clearly delineated employment practice

4   applied at a single point in the job selection process.").

5         One of the reasons that the Court dismissed the FAC was that it failed to isolate and

6   identify a specific employment practice.  The FAC purported to challenge Amazon's Productivity

7   Policy, but "that policy—per Plaintiff's own allegations—applies to an open-ended range of

8   positions and is based on indeterminate number of factors that vary depending on item, region,

9   and other measures."  Order at 7:22-8:10  (citing FAC ¶¶ 7, 29, 63, 64, 67, 110, 112, 139, 141).

10  In addition, the Productivity Policy is "tethered to the various metrics that suffer from the same

11  issue as the disparate impact claim in *Obrien*."  *Id.* at 8.  At bottom, the Court concluded that the

12  SAC failed to isolate and identify an employment practice because the SAC was "'generally

13  challenging the monitoring and enforcement' of Amazon's productivity levels based on UPH,

14  TOT, and other undisclosed factors."  *Id.* at 9 (quoting *Obrien*, 2023 WL 2207893, at *4).

15        The SAC contains no meaningful amendment.  Although the SAC attempts to change

16  Plaintiff's disparate impact theory from the alleged Productivity Policy to the alleged Stack

17  Ranking Policy, *see* SAC ¶¶ 5, 9, 10, 29, 39-40, 49, 62-63, 69, 81, 110, 112, 139, 141, the so-

18  called  "Stack Ranking Policy" is just another name for the Productivity Policy that failed to

19  support a plausible disparate claim in the FAC, as demonstrated by the summary below:

20

| "Productivity Policy" (FAC) | "Stack Ranking Policy" (SAC) |
|---|---|
| "[T]he FAC defines the Productivity Policy in paragraph 64 of the FAC as follows: 'On a weekly basis, Amazon ranks the warehouse employees by Productivity Scores, and those who are ranked in the bottom 5% are written up for poor performance, regardless of how | "Stack Ranking Policy:  Punishment of Those Ranked in the Bottom 5%:  Amazon . . . uses stack ranking to effectively decimate the workforce by punishing the most disadvantaged employees.  Discipline is meted out on the basis of *relative performance*, |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

Case No. 5:22-cv-06397-EJD

DEFENDANT'S MOTION TO DISMISS THE SAC

| | |
|---|---|
| objectively well they performed or how closely their performance compared to others.'" Dismissal Order at 7 (citing FAC ¶ 64)". | rather than by an absolute metric. Specifically, the bottom 5% in the Productivity Score rankings *each week* are subject to discipline in the form of written warnings, regardless of how well those employees may have performed objectively." SAC ¶ 9 |

Setting aside the new label, the Stack Ranking Policy includes the same vague assemblage of policies, practices and procedures that were alleged in the failed FAC. Under the name "Stack Ranking Policy," the SAC, like the FAC, targets an indeterminate range of policies, practices and procedures that touch on virtually every aspect of Amazon's warehouse operations, including but not limited to (i) "the design . . . of Amazon's fulfillment centers," (ii) the "setup of Amazon's fulfillment centers," (iii) Amazon's "safety policies," including Amazon's policies related to the use of stepladders and Process Assistants to reach items located toward the top of pods, (iv) Amazon's "overreaching" policy, (v) Amazon's "written policy" that it "would work with . . . employees to remove barriers to productivity" and managers' various efforts to assist employees under that policy, and (vi) the process of measuring and disciplining the workers in the bottom 5% of productivity, which includes (vii) productivity targets for employees that vary by region, day, and type of item handled, among other factors, (viii) measurements based on UPH, and (ix) measurements based on TOT. SAC ¶¶ 5-9, 54, 77-83; *see also* FAC ¶¶ 5-9, 12, 29, 51, 58-62, 64-67, 81-82.

The SAC attempts to cure some of the problems identified in the Dismissal Order by simply deleting some of the FAC's allegations. For instance, the SAC deletes the allegation that "Amazon uses a suite of productivity metrics and disciplinary policies and practices and incentives to maintain the quotas of its workforce." *See* ECF 26 at 74 (redline of SAC ¶ 81). Similarly, the SAC deletes the allegation that productivity scores are "based on several variables, including [UPH and TOT]," along with the allegation that UPH is "set regionally and also varies depending on the day or type of item being processed." *Id.* (redline of SAC ¶¶ 81, 82). But those

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

Case No. 5:22-cv-06397-EJD

DEFENDANT'S MOTION TO DISMISS THE SAC

1    deletions, even if credited, do not change the substance of the SAC because elsewhere in the

2    SAC, Plaintiff expressly acknowledges the existence of variables beyond UPH and TOT. *See,*

3    *e.g.*, SAC ¶¶ 7, 49 (alleging Plaintiff was "never informed of all the factors that are weighed" and

4    "Amazon does not disclose any of the other factors considered").

5              Further, the Court should not credit these deletions when assessing Plaintiff's pleading

6    because a plaintiff cannot hope to state a claim through the expedient of disavowing prior

7    affirmative factual allegations.  Indeed, the now-deleted allegations from the SAC still inform the

8    court's plausibility analysis under Rule 12(b)(6). *See, e.g., Stanislaus Food Prod. Co. v. USS-*

9    *POSCO Indus.*, 782 F. Supp. 2d 1059, 1075 (E.D. Cal. 2011) ("The Court does not ignore the

10   prior allegations in determining the plausibility of the current pleadings."); *Cole v. Sunnyvale*,

11   2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010) ("The court may also consider the prior

12   allegations as part of its 'context-specific' inquiry based on its judicial experience and common

13   sense to assess whether the Third Amended Complaint plausibly suggests an entitlement to relief,

14   as required under *Iqbal*.").

15             Finally, even if Plaintiff were to contend that she now challenges only the policy of

16   disciplining the bottom 5% of employees by their Productivity Scores (i.e., not the various other

17   processes, policies and metrics that determine how employees are ranked and the SAC purports to

18   challenge), the SAC would still fail.  Once stripped of the various policies and metrics that inform

19   the rankings, the Stack Ranking Policy reduces to nothing but the generalized practice (used by

20   countless employers) of assessing employees based on their performance relative to their peers.

21   *See* FAC ¶ 9.  But the bare practice of evaluating employee performance based on a ranking

22   system cannot support a disparate impact claim.

23             By way of illustration, in *Freyd v. University of Oregon,* 990 F.3d 1211 (9th Cir. 2021), a

24   pay equity case, the Ninth Circuit recognized the plaintiff's disparate impact theory because the

25   plaintiff did "not challenge the general practice of awarding retention raises," but instead

26   challenged the narrow, specific practice of awarding retention raises to professors (who were

27   predominantly male) based on external competing offers while *not* raising the salaries of

28   comparable professors of equal rank and seniority.  *Id.* at 1214, 1224 (recognizing that because

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13                     Case No. 5:22-cv-06397-EJD
DEFENDANT'S MOTION TO DISMISS THE SAC

the challenged practice was narrow, it would not prohibit the University from considering market factors, such as competing offers, for faculty pay). Similarly, in *Stout*, another pay equity case, the Ninth Circuit observed that the proper unit of analysis for the plaintiff's disparate impact claim was not the entire promotion process (i.e., the overall promotion rate at the end of the process), but rather the selections made at an "intermediary stage" where a screening panel selected which candidates would proceed to an interview stage. *Stout*, 276 F.3d at 1121-22. Just as a disparate impact claim cannot challenge an employer's general practice of awarding retention bonuses (*Freyd*) or an employer's general practice of promoting employees (*Stout*), so too it cannot challenge the general practice of evaluating employees based on their relative performance. *See* Dismissal Order at 6; *see also Smith*, 544 U.S. at 241; *Wards Cove*, 490 U.S. at 656 (1989); *Stockwell*, 749 F.3d at 1114 (explaining that "[r]equiring plaintiffs to name a specific employment practice 'has bite'" and is "not a trivial burden" (quoting *Meacham*, 554 U.S. at 128)).

The SAC therefore fails to state a disparate impact claim because it does not isolate and identify a specific employment practice to challenge, as the Court held when dismissing the FAC based on the same allegations.

### 2.    The SAC Fails to Plausibly Plead a Sex-Based Disparity.

The Court's Dismissal Order explained that the FAC "[fell] short of plausibly showing a disparity, let alone a *significant* disparity, between female and male workers." Dismissal Order at 11:8-11. The SAC fails to cure this defect.

#### a.    The SAC's "Statistics" Are Meaningless.

In an effort to remedy the FAC's failure to plausibly plead that a significant disparity between male and female pickers, counters, and stowers, the SAC adds four new "statistical" allegations. *See* SAC ¶ 100. All four are meaningless.

First, Plaintiff alleges that Amazon's workforce data shows a decrease from 47.0% to 45.5% in the "overall percentage of women comprising Amazon's workforce" from 2020 to 2022. SAC ¶ 100 & n.18; *see* Request for Judicial Notice ("RJN"), Ex. 1. Plaintiff's reliance on those statistics is misplaced because they say nothing about the relevant pool of employees "who

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

Case No. 5:22-cv-06397-EJD

DEFENDANT'S MOTION TO DISMISS THE SAC

worked at Amazon's warehouses in California processing 'pods' as pickers, counters, and/or stowers," SAC ¶ 29, and Plaintiff alleges no fact that suggests the gender composition of Amazon's overall workforce tracks the gender composition of employees in the relevant positions.  In addition, Plaintiff conveniently ignores the fact that the same workforce data shows that 45.5% of the overall workforce was comprised of women in 2019.  SAC ¶ 100; RJN, Ex. 1.  After a 1.5% uptick from 2019 to 2020, the percentage of women declined in 2021 by 0.1% and in 2022 by 1.4%—returning to the 2019 level of 45.5%.  *Id.*  Thus, even if it were proper for Plaintiff to draw statistics from Amazon's overall U.S. workforce, which it is not, the data does not support the inference that Plaintiff hopes to draw, because the percentage of women in the overall workforce was the same in 2022 as it was in 2019 (i.e., 45.5%).

Second, Plaintiff notes that the same workforce data shows that approximately 75% of Amazon's senior leaders are men.  SAC ¶ 100 & fn. 18.  Again, this is an irrelevant data point because pickers, counters, and stowers are not senior leaders at Amazon.  Also, that statistic plainly does not "illustrate" any policy or practice of "weeding out" female workers, as Plaintiff contends.  *Id.*  To the contrary, the data shows that the percentage of women in senior leadership has increased each year from 2019 through 2022.  RJN, Ex. 1 (21.2% in 2019, 22.9% in 2020, 24.1% in 2021, and 25.2% in 2022).

Third, the SAC notes that in 2014—ten years ago!—a *New York Times* article reported that Amazon was "staffed and run mostly by white males."  SAC ¶ 100.  The article cannot support an inference of a significant sex-based disparity in productivity-related adverse employment actions for pickers, counters, and stowers at Amazon's warehouses, much less during Plaintiff's tenure at Amazon in 2020 to 2021.  *See* SAC ¶ 48 (Plaintiff's employment).

Fourth, Plaintiff notes that a private investment firm once gave Amazon a "C" grade on pay equity.  SAC ¶ 100 & n.20.  This allegation is immaterial for many reasons.  This is not a pay disparity case.  The Scorecard says nothing about the pay of pickers, counters, or stowers at Amazon's U.S. warehouses.  The Scorecard has no bearing whatsoever on the productivity rankings of pickers, counters, and stowers.  The Scorecard is outdated because it was published in April 2018.  RJN, Ex. 2 at 1 (title page).  The Scorecard is not limited to the U.S., so it draws

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15                          Case No. 5:22-cv-06397-EJD
DEFENDANT'S MOTION TO DISMISS THE SAC

1   from the wrong population.  *See, e.g.*, *id.* at 8-10 (discussing U.K. data).  And the Scorecard

2   considers not only pay, but also a company's pay transparency, which resulted in a downgrade to

3   Amazon for its perceived lack of transparency on certain disclosures.  *Id.* at 10.

### b.   Plaintiff's Anecdotes Are Insufficient.

5           As the Court explained when dismissing the FAC, Plaintiff's "sparce allegations

6   concerning Plaintiff's experience at one warehouse over the course of ten months falls short of

7   plausibly showing a disparity, let alone a *significant* disparity, between female and male workers"

8   in the picker, counter, and stower positions at Amazon.  Dismissal Order at 11:7-9; *see also id.* at

9   11:19-20 (stating "a few anecdotes [are] insufficient" (citing *Wal-Mart Stores, Inc. v. Dukes*, 564

10  U.S. 338, 358 (2011))); *Obrien*, 2023 WL 2207893, at *5 ("[N]one of these anecdotes, however,

11  demonstrate that older workers suffer disproportionately more injuries than younger workers;

12  rather, they are simply examples of older workers who have gotten injured."); *Mahler*, 67 Cal.

13  App. 5th at 115 (dismissing disparate impact claim that lacked "anecdotal information of a

14  significant age-based disparity").

15          The SAC does not address this problem.  Even after amendment, the SAC includes only a

16  few cursory allegations about Plaintiff's observations and experiences at the Fulfillment Center in

17  Sacramento where she worked for about 10 months in 2020 and 2021.  SAC ¶¶ 48, 62, 99.

18  Plaintiff alleges in conclusory fashion that she "continually observe[d] female workers of similar

19  height being written up for having lower Productivity Scores and longer TOT scores."  SAC ¶ 62.

20  She also generically alleges that she "spoke with several coworkers and noticed that the vast

21  majority of those who were written up . . . were women."  *Id.*  She says she "observed mostly

22  women in the outbound area, and they were generally shorter in stature."  *Id.*  Plaintiff also offers

23  generic anecdotes about two co-workers.  She alleges that "she spoke with one female co-worker

24  who said she had been written up twice . . . and this female co-worker was slightly shorter than

25  Plaintiff," and that she "spoke with another female co-worker" of undisclosed height who "said

26  she was reprimanded by her manager because of her 'pick rate.'"  *Id.*  Finally, she generically

27  alleges that she observed that "mostly petite women received discipline for issues with

28  Productivity Scores," and "she hardly, if ever observed male employees similarly facing

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16                                    Case No. 5:22-cv-06397-EJD

DEFENDANT'S MOTION TO DISMISS THE SAC

1    productivity issues." SAC ¶ 99.

2          With only minor, insignificant changes, those are the same generic allegations that

3    appeared in the failed FAC.  *Compare* SAC ¶¶ 62, 99, *with* FAC ¶¶ 85, 100.  The quantity and

4    quality of Plaintiff's smattering of anecdotes and observations drawn from her personal

5    experience cannot support a plausible inference of disparate impact because they address only a

6    microscopic fraction of Amazon's warehouse workforce and do so in a generic way.  In *Dukes*,

7    564 U.S. 338, 358 (2011), for instance, the Supreme Court noted that 120 affidavits reporting

8    anecdotal experiences of discrimination were insufficient given the scope of the class of 1.5

9    million, because the evidence amounted to one affidavit for every 12,500 class members, from

10   235 of Wal-Mart's 3,400 stores, and without any anecdote from a store in 14 different states.

11   *Dukes* illustrates the uncontroversial point that a court must view the quantity and quality of

12   anecdotes in the context of the inference that the plaintiff seeks to support, which differs

13   dramatically for a plaintiff who alleges significant disparities at a company with a small

14   workforce compared to a plaintiff who works for a company of Wal-Mart's or Amazon's size and

15   scope.

16         In short, the SAC's anecdotes fall woefully short of plausibly suggesting that a disparity

17   existed between males and females that Amazon disciplined or terminated in the picker, counter,

18   and stower positions—much less a significant one—even at Plaintiff's own facility in

19   Sacramento, let alone on a statewide or nationwide scale.  Dismissal Order at 11; *Dukes*, 564 U.S.

20   at 358; *Obrien*, 2023 WL 2207893, at *5 ("Simply because physical strength declines with age

21   does not automatically mean that older workers are more likely to get injured or fail to keep up

22   with the quotas . . . there is nothing [in the complaint] to demonstrate that there is any statistical

23   adverse impact on the putative class because there is no information specific to the putative

24   class."); *Brown v. FPI Mgmt., Inc*., 2012 WL 629182, at *4 (N.D. Cal. Feb. 27, 2012) ("Plaintiff

25   fails to do anything more than speculate regarding the effect of Defendants' practices on other

26   African–American employees."); *Filho v. Gansen*, 2018 WL 5291986, at *4 (N.D. Cal. Oct. 19,

27   2018) (dismissing disparate impact claim because plaintiff had not shown a "disparate impact on

28   a persons of a particular type"); *Mora v. US Bank*, 2015 WL 4537218, at *8 (C.D. Cal. July 27,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17                          Case No. 5:22-cv-06397-EJD
DEFENDANT'S MOTION TO DISMISS THE SAC

2015) (dismissing disparate claim where plaintiff did "not clearly allege, in a non-conclusory way, that Hispanic/Latino borrowers actually have worse outcomes under Defendant's policies than other racial or ethnic groups do.  This is key . . . a plaintiff must allege actual impact on the relevant group.").

### 3.      The SAC Fails to Plausibly Plead Causation Between the Challenged Practice and the Alleged Sex-Based Disparity.

Even if a significant disparity in outcomes (i.e., discipline and termination) existed between male and female warehouse workers at Amazon, Plaintiff fails to plead facts that plausibly establish that the Stack Ranking Policy caused that hypothetical disparity.  A disparate impact claim carries a "robust causality requirement."  Order at 10 (quoting *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 521 (2015)).  To avoid dismissal, a complaint "must allege facts or statistical evidence demonstrating a causal connection between the challenged policy and a significant disparate impact on the allegedly protected group."  *Mahler*, 67 Cal. App. 5th at 114;  *see also Texas Dep't of Hous. & Cmty. Affs.*, 576 U.S. at 521 ("A disparate-impact claim relying on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity.  A robust causality requirement is important in ensuring that defendants do not resort to the use of racial quotas."); *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 993 (1988) ("If quotas and preferential treatment become the only cost-effective means of avoiding expensive litigation and potentially catastrophic liability, such measures will be widely adopted . . .  Allowing the evolution of disparate impact analysis to lead to this result would be contrary to Congress' clearly ex-pressed intent").

Like the FAC, the SAC alleges that women are shorter than men on average and that women therefore tend to have a lower Standing Vertical Grip Reach than men.  SAC ¶¶ 88-92.[5]

---

[5] The SAC asserts that "Amazon's Fulfillment Center workforce is a representative sample of the United States adult population" because Amazon hires "broadly from the surrounding communities" in large numbers.  SAC ¶¶ 4, 93.  But those allegations are bald conclusions without any substantial factual allegation to support them.

Based on those allegations, Plaintiff asks the Court to leap to a series of conclusions that have zero factual support in the SAC, including that women who work with pods in a variety of jobs throughout Amazon's nationwide workforce use stepladders or Project Assistants more frequently than men, that the use of stepladders or Project Assistants results in a material difference in women's UPH and TOT compared to men, and that this assistance is unavoidable because the failure to comply with warehouse safety policies results in a risk of injury or discipline for women more frequently than men.  SAC ¶ 98.  She then asks the Court to indulge her further speculation that women *therefore* receive lower productivity scores than men, and that these purported disparities are so significant that they support an inference of a "*de facto* height requirement" that has a disparate impact on Amazon's female warehouse workers across the nation.  *Id.* ¶¶ 69, 98.

As the Court stated in its Dismissal Order, "[g]iven the scope of the proposed class and Amazon's Productivity Policy at issue, Plaintiff's limited observations are insufficient to demonstrate a causal connection between the challenged policy and a significant disparate impact on the group."  Dismissal Order at 11:13-16.  The same is true of the SAC.  Not only are Plaintiff's anecdotes generic, but they also do nothing to cast light on the multitude of productivity-related working conditions or circumstances at her workplace in the Sacramento facility.

There are no details about how much time she spent on any task, how much time any employee of the same or another sex or height spent on any similar tasks, nor are there any comparisons of the variable UPH and TOT metrics, or Productivity Scores, between male and female employees even at her facility, let alone at all of Amazon's warehouses across the state or across the country.  Plaintiff also does not address how the incremental difference in average height of males and females in the United States affects Amazon warehouse employee performance when working with pods, other than to speculate that women are disadvantaged.  Nor is there anything but speculation to support her conclusion that taller employees gain an "advantage" over shorter employees that equates to a statistically significant disparity, *id.* ¶ 8, especially when, according to Plaintiffs' allegations, the productivity of taller employees would

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

Case No. 5:22-cv-06397-EJD

DEFENDANT'S MOTION TO DISMISS THE SAC

1  be slowed by their need to bend or squat to reach the items toward the bottom of the pods that are

2  more readily accessible to shorter employees.  *Id.* ¶¶ 48, 94-98.

3       In other words, the SAC "lacks facts that could support a plausible inference that a

4  disparity . . . is caused by Amazon's [Stack Ranking] Policy."  Dismissal Order at 12:5-7.

5       **B.**     **Plaintiff's Derivative Claims Fail.**

6       Plaintiff's Second and Third Claims, alleging "failure to prevent" under FEHA and a

7  violation of UCL, fail.  These derivative claims fail because Plaintiff's claims for discrimination

8  under Title VII and FEHA fail.

9       A "failure to prevent" claim requires a predicate violation.  *Trujillo v. N. Cnty. Transit*

10 *Dist.*, 63 Cal. App. 4th 280, 286-89 (1998).  Thus, when a complaint fails to state a claim for

11 discrimination, retaliation, or harassment, a tag-along "failure to prevent or correct" claim fails

12 too.  *Hicks v. Netflix, Inc.*, 2020 WL 2463380, at *5 (C.D. Cal. Mar. 19, 2020) (explaining that

13 failure to prevent claim and FEHA claim would "rise and fall together" on motion to dismiss);

14 *Airy v. City of Hesperia*, 2019 WL 8017811, at *4 (C.D. Cal. Sept. 13, 2019) (dismissing failure

15 to prevent claim because no actionable discrimination, harassment or retaliation claim was

16 sufficiently pleaded); *Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 907 (E.D. Cal. 2017)

17 (dismissing failure to prevent disability discrimination claim where plaintiff had failed to

18 sufficiently allege underlying disability discrimination); *Abdul-Haqq v. Kaiser Emergency in San*

19 *Leandro*, 2017 WL 1549480, at *8 (N.D. Cal. May 1, 2017) (dismissing failure to prevent claims

20 "because plaintiff has not sufficiently pleaded that any protected harassment or

21 discrimination occurred").  Those are the circumstances here.  Plaintiff has not stated a sex

22 discrimination claim, as explained above, so she has not stated a "failure to prevent" claim either.

23       Like her claim for failure to prevent discrimination, Plaintiff's claim for violation of

24 California's UCL is purely derivative of her sex-discrimination claims and fails along with them.

25 *Asencio v. Miller Brewing Co.*, 283 F. App'x 559, 561 (9th Cir. 2008) (affirming dismissal of

26 derivative UCL claim where complaint failed to adequately allege FEHA claim); *Fragada v.*

27 *United Airlines, Inc.*, 2017 WL 4586933, at *8-9 (C.D. Cal. June 13, 2017) (holding that UCL

28 claim failed because underlying FEHA claim failed).  Further, her claim for injunctive relief fails

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20                                    Case No. 5:22-cv-06397-EJD
DEFENDANT'S MOTION TO DISMISS THE SAC

1  because, as a former employee, Plaintiff cannot pursue injunctive relief.  *Dukes*, 564 U.S. at 364

2  (acknowledging that those plaintiffs no longer employed by the defendant "lack standing to seek

3  injunctive or declaratory relief against its employment practices.").

4        **C.**      <u>**Plaintiff Fails to Plausibly Plead Class Claims.**</u>

5        Class claims "must be supported by sufficient factual allegations demonstrating that the

6  class device is appropriate and discovery on class certification is warranted."  *Jue v. Costco*

7  *Wholesale Corp.*, 2010 WL 889284, at *6 (N.D. Cal. Mar. 11, 2010); *Zamora*, 2021 WL 809403,

8  at *3 (dismissing class claims for lack of supporting allegations because "Plaintiffs cannot point

9  to a fish in the surf to force Defendant on a deep-sea charter [of class discovery]").  An essential

10  element of the class device is that the named plaintiff's "claims must depend on a common

11  contention" and "[t]hat common contention . . . must be of such a nature that it is capable of

12  class-wide resolution—which means that determination of its truth or falsity will resolve an issue

13  that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.

14  Plaintiff has not plausibly alleged commonality.

15        The SAC does nothing but generically allege that Plaintiff is similarly situated to other

16  female workers who worked in a variety of positions with the pods because "Amazon's policies

17  subjected them to different and adverse employment actions as a result of their sex.'"  SAC ¶¶

18  107, 136.  She cannot plead class claims on behalf of every female employee without identifying

19  some "glue" that binds these various workers together for purposes of a class proceeding.  *See*

20  *Dukes,* 564 U.S. at 352.  As in *Dukes*, the purported class members here "have little in common

21  but their sex and this lawsuit."  *Id.* (quoting and agreeing with dissenting opinion below); *see also*

22  *id.* ("Without some glue holding the alleged reasons for all those decisions together, it will be

23  impossible to say that examination of all the class members' claims for relief will produce a

24  common answer to the crucial question *why was I disfavored*.").  Plaintiff has not isolated and

25  identified a specific employment practice, offered any statistics or comparative figures to support

26  an inference of causation, or even articulated a coherent theory of causation.  *See supra* § IV.A.1.

27  Even more problematic is that she admits on the face of the SAC that she is not similarly situated

28  to all female workers because she observed only other "petite women" at her workplace allegedly

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

Case No. 5:22-cv-06397-EJD

DEFENDANT'S MOTION TO DISMISS THE SAC

sharing her experience.  SAC ¶ 99.  In other words, even if Plaintiff could plausibly allege that female employees were disproportionately affected by a specific practice related to the pods, there is no glue that holds Plaintiff together with female employees who, for example, did not fall in the lowest 5% of Productivity Scores, did not use stepladders or Process Assistants (or used them infrequently), or whose productivity and working conditions varied along countless variables that affect productivity, safety, and discipline in a complex warehouse work environment.  Any answer to the question of why Plaintiff was allegedly disfavored does not answer why any other female employee was disfavored (if they were disfavored at all).  Thus, Plaintiff has no allegations to plausibly suggest she is similarly situated to all female Amazon warehouse employees for purposes of her disparate impact claim.

Courts in the Ninth Circuit frequently dismiss class allegations where, as here, the named plaintiff fails to allege facts that plausibly suggest putative class members were subject to the same policies or had sufficiently similar work experiences.  *See, e.g.*, *Zamora*, 2021 WL 809403, at *3; *Mish*, 2021 WL 4592124, at *9 (dismissing unpaid wage claims on behalf of a class where plaintiff failed to allege details about her worksite, location, other employees at her location, whether her role was the same or different than others at the company, whether her worksite was typical of other worksites, how many worksites there were in California or details that could allow an inference that plaintiff's experience was typical of the class); *Alvarado v. Wal-mart Assocs., Inc.*, 2020 WL 6526372, at *3 (C.D. Cal. Aug. 7, 2020) (dismissing class action allegations where plaintiff had not alleged "she has any knowledge of employment practices" across California or "specific facts" showing that employees at her location had the same experiences).[6]  The Court should do the same here.

---

[6] *See also, e.g.*, *Bush v. Vaco Tech. Svcs., LLC*, 2019 WL 3290654, at *5 (N.D. Cal. July 22, 2019) (dismissing class claims and finding that "[w]ithout a single non-conclusory, factual allegation about these potential class members, Plaintiff has not plausibly alleged that any of these employees experienced the same alleged violations as Plaintiff"); *Byrd v. Masonite Corp.*, 2016 WL 756523, at *4 (C.D. Cal. Feb. 25, 2016) (dismissing class claims where "Plaintiff

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22                                Case No. 5:22-cv-06397-EJD
DEFENDANT'S MOTION TO DISMISS THE SAC

1

**V.      CONCLUSION**

2          For all the foregoing reasons, the Court should dismiss each of Plaintiff's claims and

3   dismiss her class allegations, without leave to amend.

4   Dated: March 28, 2024                                 MORGAN, LEWIS & BOCKIUS LLP

5

6                                                   By   */s/ Brian D. Berry*
                                                        Brian D. Berry
7                                                        Sarah Zenewicz
                                                        Roshni C. Kapoor
8                                                        Attorneys for Defendant
                                                        AMAZON.COM SERVICES LLC
9

10

11  DB2/ 47668497.7

12

13

14

15

16

17

18

19

20

21

22

23

24

25   _____

26  alleges no facts to demonstrate or even suggest that any member of the putative class had similar

27  work experiences" or to "show[ ] that Defendants had statewide policies or practices giving rise

28  to Plaintiff's causes of action").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23                    Case No. 5:22-cv-06397-EJD
DEFENDANT'S MOTION TO DISMISS THE SAC